May it please the court, Davina Chen on behalf of Mr. Bustamante. Mr. Bustamante was convicted of three offenses, each of which required the government to prove that he was not a U.S. citizen. The government's Exhibit 1, literally and figuratively, was a 1975 certification that attested to the existence of a 1939 birth record and three separate attestations that purported to establish the authenticity of the 1975 certification. After Crawford, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness is unavailable and has been subject to previous cross-examination. There have been a lot of definitions of testimonial, but it clearly includes at least certifications made for the purpose of proving a particular fact and created specifically to serve in a criminal proceeding. That's what these certifications were. Their introduction against Mr. Bustamante at trial violated his right to confront the witnesses against him. The question I want to ask is, there was a statement by the Philippine government that all of the records around 1939 to 1945 were destroyed, I guess, because of the Japanese occupation? There was a statement that they were all destroyed. It wasn't entirely clear how they were destroyed. But then how could it be possible in 1975 to have a record of his birth certificate? That is exactly the question that the jury should have been asked to determine. It doesn't appear that there could have been a 1975 certification, but because Mr. Salupisa, who is the person who is alleged to have signed that certification, was not present at trial, we couldn't ask him that question. We couldn't ask Mr. Salupisa how it is in 1975 that he was able to certify the existence of a 1939 birth record that had been destroyed. And then we couldn't ask Ms. Hufana how she knew that that was an authentic record, given that she didn't know Mr. Salupisa and that her office itself said that not only was there no record in Bacolod City, which is the ones that were, I think, destroyed, but there was no record of this birth record even in Manila. And then we have this e-mail from the Filipino official saying that, you know, birth records prior to World War II were not very well kept. And so certainly all these things would have been neat for cross-examination, but because none of these witnesses appeared, the defendant was not allowed to cross-examine any of them. What witness could have been available who could have testified to the existence or the nonexistence of birth records for Bustamante? Well, I don't think any witness would have been available. And what I think what's clear after Crawford, Melendez, Diaz, Gillis, Davis, et cetera, is that if the witness is simply unavailable and he hasn't been cross-examined, then the government bears the burden of that. The government has to prove its case. And if it can't prove its case, then the government loses. Now, if we were to find that that record should not have been entered, it seems to me that there was a lot of other evidence which would point to Bustamante's actually being a Philippine citizen and born in the Philippines. There are all sorts of applications that he made and others made. So that assume we strike this certificate and say it should never have been entered, could we still hold that Mr. Bustamante was actually a Philippine citizen? Are you asking whether this Court could hold that it was harmless or whether a jury could do that? Because it seems to me that this Court can't do it. The government's main evidence that Mr. Bustamante was not a U.S. citizen was this birth record. And the standard for harmless beyond a reasonable doubt is could the jury have relied in part on this record? And clearly in this case, the jury would have relied on this record as the government emphasized it. They continued the case precisely to have this record admitted. They sought a pretrial ruling so that it could be shown during opening statement. They introduced it through their first witness, who was an ICE agent. They returned to it through their last witness, who was the State Department agent. And then they mentioned it twice in closing, first in the opening and then in the rebuttal closing. Was there any evidence about how the Air Force obtained this document in 1975 or any other? There's nothing in the record. All we have is the questioning, which is this was obtained as part of a court martial investigation. That's it. Which was later dropped. So that comes in. Which was later dropped. And then we also have evidence that the Air Force interviewed Mr. Bustamante's grandmother, who testified, who told them that he was, in fact, born in a labor camp in Stockton. So the evidence, the so-called evidence that Mr. Bustamante was actually a Filipino citizen relies almost entirely on the birth certificate. The government focuses on other documents that Mr. Bustamante submitted in claims for Social Security. But the only thing that those show are that there was somebody named Bustamante. And it's not even Napoleon Bustamante. It's like a different Bustamante who was born in 38, 39, or 1945, who was born in Manila or Bacolod City or the United States. And none of those would have – they don't corroborate anything. If you have a birth certificate, then you can say, well, the fact that he has these other documents that sort of have the same information as the birth certificate, then you can say that those documents corroborated the birth certificate. But with no birth certificate, there's nothing to corroborate. You just have a bunch of random documents that say he was born this year, that year, or the other, in this place, that place, or the other. And so in terms of finding constitutional error harmless beyond a reasonable doubt, we have to find that the jury could not have relied on this document. And clearly, the jury relied on this document. It was Government's Exhibit 1. There is simply no way to find this error harmless. I think the Supreme Court was very clear in Van Aerstal, and this Court was clear in Nguyen, that we don't sort of think, well, it probably is reliable, so therefore what we do is we think, what would cross-examination have done to this document? And cross-examination would render this document totally unavailable. And without this document, the government did not prove that he was not a U.S. citizen. They brought in evidence of the falsity of the, either it was baptism or the church didn't exist testimony. They brought in inconsistencies in his passport applications. They brought in inconsistencies in his Social Security applications. In fact, the final rebuttal argument hardly mentions, and I didn't see a mention, of Exhibit 1. Told the jury, focus on Exhibit 18. And I know in the brief you try to highlight the fact that Exhibit 1 is at the center of this. Assume Exhibit 1 wasn't admissible. I see, in reading the transcripts, very little reference in closing arguments in particular to Exhibit 1, and a lot of reference to all the other exhibits introduced by the government. How can you then say that it simply wasn't harmless, beyond a reasonable doubt, to admit Exhibit 1? Well, first of all, the government did refer to Exhibit 1 in their closing and in their final argument. That's at Excerpt of Record 214, 215, and it accepts Excerpt of Record 233. And second of all, let's go to the baptismal record, because it's not clear at all that that baptismal record was falsified. The reverend of that church testified that he had seen that record in his court – in his church file. So if it was falsified, it would have had to have been falsified before it made its way into the church file. And that, I just don't understand how that would happen. The only so-called proof that that baptismal certification was falsified was that that church was not performing baptisms at that address at that time. Why would someone born in 1945 in Stockton tell Social Security I was born in 1937? I'm sorry, excuse me? Why would someone who was born in 1945 in Stockton tell Social Security I was born in 1937? You mean in the very beginning, or do you mean in 2001 when he applied for – Well, why would he give a different date anyway? Well, I could see why he would do so in 2001, because in order to be eligible for retirement benefits, he needed to be 62. But that's like a different crime, right? Whether he lied in 2001 is a totally different percentage. So they just charged the wrong crime. Well, if that is what they wanted to charge, they should have charged that. But we're not talking about that. I mean, yes, he told Social Security that he was 62 years old. You did, in fact, have to be 62 years old in order to be eligible for retirement benefits. But that doesn't prove that he's not a U.S. citizen. That just proves that he lied to obtain Social Security benefits. And you don't think the credibility of the defendant has any impact on the jury in their deliberations? I think it might have some impact on the jury, but we're talking about harmlessness beyond a reasonable doubt. It's not whether or not they would have thought that this defendant was awfully wacky, right, changed his name to King Arthur XIII. I mean, a very wacky person. But that is not the standard for whether somebody can be found guilty beyond a reasonable doubt of three Federal crimes, which required the government to prove. Not Mr. Bustamante to prove that he was a U.S. citizen, but the government to prove that he was not a U.S. citizen. All right. You're over your time. Thank you very much, counsel. Ms. McLaughlin, you may proceed. Thank you. Good morning, Your Honors. Dorothy McLaughlin on behalf of the United States. May it please the Court. Napoleon Arturo Bustamante's conviction should be affirmed by this Court. The district court did not err, let alone plainly err, in admitting a trial defendant's Filipino birth certificate. You think there was no objection to the document at the time? There was an objection. I think that the standards of review are a little bit. I think there was an objection. There was an objection. There was an objection and an argument over this. There was to the birth certificate, but the government's position is that the objection to the certifications was not preserved. It's in their trial brief. I beg your pardon? It's in their trial brief. To the certifications, but not on the basis on which they then argue on appeal. Well, what difference does it make, really, whether the certifications are authentic or not? I mean, it doesn't matter if the birth certificate isn't admissible. So, and we're reviewing. We're not reviewing that for plain error. We're reviewing that to determine whether or not it was harmless beyond a reasonable doubt. The admission of the birth certificate? Yes, Your Honor, that is correct. Okay. And it's not a birth certificate either, is it? Since the evidence. It is a birth certificate. The evidence is that all the records were destroyed. So how could it be a birth certificate? First, I'd like to correct a factual, I think, misunderstanding, which is there is evidence that in the record that those birth records between 1939 and 1945 were in fact destroyed. There is not evidence in the record as to when the destruction occurred. And so it is possible that in 1975 the chief of the civil registrar office in Bacolod could make a copy of the birth certificate. And the birth certificate says on its face that according to the records of birth in this office, which is the office of the local civil registrar, this is the copy of the birth certificate. And the heading of the document is, in fact, birth certificate. It then goes on to include many indicia of a valid birth certificate. It says that it was register number 401 on page 86. It explains that the informant of the birth is the mother. It explains that the citizenship of the child is Filipino, that he's born on February 1, 1939, even though in the exhibit that's redacted, but there was evidence at trial that it was February 1. And in addition, the copy says that it's made for any purpose that it's needed, that there's no indication that Mr. Salapiza knew that it was being used in preparation – it was going to be used for litigation. And moreover, there's no evidence at trial that it was prepared in preparation for litigation. So – Who's Mr. Kaufman? There's – in the record, there's no definitive explanation of who Mr. Kaufman is. Is there evidence that it was prepared – it was prepared at the request of the Air Force so that they could proceed with court-martialing him? No, Your Honor, there isn't. There is evidence in the record that – There is evidence somewhere that someone requested this for the purpose of the proceedings in the Air Force. Your Honor, there's evidence that it was requested by the Air Force, and that evidence was provided, I think, at the pretrial proceedings, and that's at the excerpt of Record 109 and 112. But there's no mention that it was specifically requested for a court-martialed proceeding. It says it was requested by the Air Force. And then later, in the cross of Special Agent Traum-Martinson, who is a special agent with the Department of State, and that record site is ER 186-187, she says at page – and by the way, the record sites in the opening brief are actually incorrect. Agent Martinson says that this was produced in response to a request from an INS official. But it doesn't say that it was produced in response to the request of an INS official for deportation proceedings. So there is evidence as to the entities that requested, but not the purpose. So this document isn't certified either, and the information is on the same page as the statement saying the following is the copy. And it would just seem to me that how could the following be the copy if it had also additional information on it? I mean, a copy would be the copy of what was actually in the register. Which is what this purports to be, I guess. Oh, because it's like two different things. I mean, it's a typed in – it looks to me that someone was looking at the birth information. The government thinks that very well may be the case, that there is some enormous book in Backlot City, and at page number 86, number 401, this is the information that exists. So we would need page 86, register 401 for it to be a birth certificate. This isn't a birth certificate. It's someone, as Judge Wardlaw just said, looking at page 86, register 401, and it's not a birth certificate. Because, again, you look at Exhibit 1 at the bottom, a birth certificate wouldn't say the foregoing is issued in the city upon the request of Mr. Kaufman. No, it wouldn't. So it's not a birth certificate, right? But it is the record of Napoleon Bustamante's birth in 1939 in the Philippines. Right. So it's testimonial. It's not testimonial under Supreme Court. Yes, it is. It's Mr. Salapisa saying this is what is in the registrar that reflects, that is, the certificate of his birth, and this is the information. So when you provide that to the court, it's Mr. Salapisa's testimony that this is what's in that book. But does that mean that when I request from the Los Angeles County Registrar a copy of my daughter's birth certificate that that's testimonial because it's a copy? It wouldn't say on the bottom of the certificate the foregoing is issued at the request of Ms. McLaughlin, no. I have to carry around copies of my daughter's birth certificate for her soccer tournaments, all right? And it is an actual copy of the certificate with a stamp on it. And when the people look at it to determine whether it's authentic or not, because you could forfeit the game if you have someone that's older than the age of the group, they hold it up and they look through it and they feel the seal, and that's how they determine whether or not it's an actual birth certificate. This is not that. Your Honor, this did have a seal, and that is in the record. I'm sorry I don't have the exact site, but it did have a seal. But even assuming that this isn't a birth certificate and it's testimonial and it came in and it was error, there was a host of other evidence that Mr. Bustamante is Mr. Bustamante, born February 1, 1939, in Bacolod City in the Philippines. And it was beyond a reasonable doubt. The evidence that is, in fact, most compelling is, of course, the evidence, the admissions from the defendant himself. And that was Government's Exhibit 21, which he submitted in 2001. So why was the trial continued a week so you could get other certifications? Why was it Exhibit 1? Why was it mentioned in the opening, in the first closing, and in the rebuttal closing if it wasn't the centerpiece of the Government's case? Judge Mendez, there's a number of questions in the umbrella of why was it the centerpiece. The Government submits it wasn't the centerpiece. It wasn't. And as you point out, the Government really emphasized in its closing, the Exhibit No. 18, and I think the component parts of Exhibit No. 21 were also emphasized. Why did we ask for a continuance? It was a strategy call under – with due respect, you're a trial court judge usually, and it was a strategy call under pressure of trial. That doesn't make it the centerpiece of the Government's case. And we didn't ask for a continuance because we wanted it to be the centerpiece of the Government's case. Truly, the most compelling information comes in Exhibit 21. And one thing I'd like to point out about Exhibit 21 is that the Government's excerpt of record, page 195, within the school records that he provided saying that his father is Isabella Bustamante, which is true in all of the identifying documents, that date of those records is 1946. So the Government would submit, how can he also say that he's being baptized in Los Angeles in 1946 when school records that he submits on his own say that he was in school in the Philippines in 1946? But in addition to the school records and the New York Life insurance paper and everything else that's in Exhibit 21, that's not all that the Government had to hang its hat on. We also have the travel document, which was issued by the Philippine Government when Mr. Bustamante was deported in April of 2008. And although that wasn't admitted at trial, it was discussed by two different witnesses. One was Joseph Mujica, a supervisor from ICE, who explained that if a foreign country is going to admit one of its nationals because that person is being deported, they won't do so unless they know that that person is, in fact, a national of their country. And thus, there was a travel document which allowed for his deportation to the Philippines. Additionally, Melissa Harper, who was the deportation officer who witnessed his deportation from Yuma all the way to the Philippines, also testified about the travel document. In addition to that, when he was first preparing to come into this country in February of 1970, and he's filling out his visitor visa application, he puts down 1939. He puts down that his place of birth is Bacolod City. Then when he enters in his I-94, that information is reiterated, and it keeps getting reiterated in the other documents. The only evidence of him not being born in the Philippines comes as based on a fraud, which is that baptismal certificate. And that he parlayed into the delayed registration of birth from the State of California. All right. Thank you, counsel. You're over your time. I'll give you a minute if you need it. Just two very brief points. The excerpt of Record 63, the government represented to the court that the 1975 birth certification was obtained as part of an earlier investigation of the defendant. So I think it should be very clear that that's not a birth certificate. That's a form that the government obtained in preparation for litigation. In terms of the harmlessness of the error, the government, as you know, is asking this court to assume that he was born in 1939 in Bacolod City, and then to say that all these things he did were consistent with that assumption, that he entered in 1970. But the record actually reflects that the person who entered in 1970 also left in 1970, and there's no evidence that that person returned. So the government basically asked this court to assume the result and then say, Every piece of evidence that we submitted is consistent with that result. But in order to find an error harmless beyond a reasonable doubt, you can't assume the result. You have to start at the beginning. In the beginning of this case, the only reason we would believe any of those documents prove that Mr. Bustamante was born in the Philippines is because they tend to corroborate the birth certificate, the so-called birth certificate that the government now says was not the centerpiece of its case. And I would submit, Your Honor, that that is just the improper analysis. You have to start at the beginning, not assume that the defendant is guilty beyond a reasonable doubt and show how all the government's evidence is consistent with that assumption. You have to look at the pieces of evidence taking out the birth certificate and see whether that would have been proof beyond a reasonable doubt, and not to you, to a jury. All right. Thank you very much, counsel. United States v. Bustamante is submitted. We'll take a United States v. Bustamante.
judges: Mendez, Fletcher, Wardlaw